## LESLIE STORY v. STATE.

No. A-7925. Opinion Filed June 6, 1931.
Rehearing Denied Aug. 8, 1931.
(2 Pac. [2d] 289.)

Mitchell & Mitchell, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Oklahoma county of the crime of larceny of an automobile, and, the jury being unable to agree upon his punishment, the same was fixed by the court at imprisonment in the state penitentiary for five years.

The evidence of the state was that one Francis was the owner of a red Buick automobile, 1929 model, motor No. 2,372,460, with Illinois tag No. 160,989. It was stipulated that this car was taken without the knowledge or consent of Francis. At the time defendant was arrested and possession of the car taken, the tag on the car was issued by the highway department on a Chevrolet 1924 model, to O. B. Roth, 912 West First street, and which tag had been reported stolen.

Hill and Ragland, two police officers, testified that the crossing at Broadway and the Rock Island tracks was blocked by a freight train; that they noticed a Ford touring occupied by two men on their right and a red Buick car; that the driver of the Ford car backed up and struck the Buick car and turned across the street and went west on First street to Walker; that they followed in their car and the red Buick car also followed; that the Buick car was being driven by the defendant in this case; that the drivers of the Ford car speeded up and ran two stop lines, going at a speed of 45 or 50 miles an hour; that the officers forced the car to stop, and, while they were talking to the men in the car, the defendant, who had parked the red Buick car about a block and a half away, came up to the car and told the officers that he knew the men in the car, and that they were all right and that he was going with them to see that they did not run any more stop lines. Thereupon the officers turned the men loose and allowed the Ford car to proceed.

One of the occupants of the car testified that, after they had driven two or three blocks, the defendant said that he knew the car was "hot as hell" and he had stashed it. That thereupon they insisted that defendant get out of the car, because they were afraid he would get them into trouble, and the defendant did get out of the car and started back to where he said he had left the car parked.

The officers testified that they had a bulletin describing a stolen car and identified this car parked by the defendant as the stolen one, and that they circled a block and waited for the defendant to come back. That in 15 or 20 minutes they noticed the defendant on Hudson, walking east; that when he saw the officers he turned and went over on Dewey and west a block; that in the mean-

time the officers had been to the car and identified it as the one defendant had been driving; that when the officers arrested the defendant, about a block and a half from the car, he started to go up between two buildings; that when they stopped him and asked him what he was doing there he said he lived there, and denied that he had ever seen the Buick car or had anything to do with it or knew anything about it; that the officers inquired at the house and were told that the defendant did not live there, and that the people living there had no interest in the Buick car.

Jack Cox, testifying for the state, said that he was one of the occupants of the Ford car; that the defendant had asked him and his companion to take him down to where this Buick car was parked behind some box cars on the Santa Fe tracks; that he was afraid of the car because of the manner in which it was concealed; that when the car would not start he got behind it and pushed it with the Ford until it started, and then they drove out and went on the trip as detailed by the officers, except that he said they did not go to the Rock Island tracks on Broadway, but did go to Walker, and said he did not remember backing up and going down on First street.

After his arrest the officers took defendant to the police station, where he was released by the desk sergeant on a charge of loitering. That a charge of automobile larceny was filed the next day and the defendant arrested at about 8 o'clock in the evening.

Defendant, testifying for himself, said that a friend of his named Kaiser told him he was going to Texas for a week and gave him his keys and asked him to take care of his car. That Jack Cox and his friend took him down to where the car was parked, and that he took possession

of the car and drove it out as described by the officers and other witnesses and finally abandoned it at the place where the officers said they found it; that he had drunk a lot of "jake" that night and was pretty drunk and was afraid the officers were going to arrest him was the reason he denied seeing the car and denied having anything to do with it. He also denied telling the officers that he lived at that place.

Defendant never told his father or anybody about his friend giving him the keys until he told his lawyer prior to the trial. Defendant's father testified that he had never heard the story of the keys until it was told there in the courtroom.

Defendant assigns several grounds of error, but, in substance, they all go to the sufficiency of the evidence to support the verdict of the jury.

When all of the facts and circumstances are considered together with the contradictory stories told by the defendant at and prior to his arrest, there is sufficient evidence to support the verdict of the jury.

DAVENPORT, P. J., and EDWARDS, J., concur.